**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

REGINALD D. HIGGINS, SR.,                           Case No. 1:09-cv-228

       Plaintiff,                                     Dlott, J.
                                                    Bowman, M.J.

 v.

VITRAN EXPRESS, INC., et al.,

       Defendants.


**REPORT AND RECOMMENDATION**

After receiving a "right to sue" letter from the EEOC (Doc. 3-1 at 2), Plaintiff filed this *pro se* employment discrimination action on March 31, 2009 against both his employer, Defendant Vitran Express, Inc., and a customer of the employer, Defendant Parker Hannifin, Inc. The latter entity was dismissed on July 14, 2010 for failure to state a claim, leaving Plaintiff's employer as the sole remaining Defendant (*See* Docs. 45, 57). On January 10, 2011, Defendant Vitran Express moved for summary judgment (Doc. 77). In lieu of a response, Plaintiff filed a cross-motion for summary judgment on January 25, 2011 (Doc. 80), to which Defendant has filed a response (Doc. 81). The parties' cross-motions for summary judgment have been referred to the undersigned magistrate judge for initial review and a report and recommendation. *See* 28 U.S.C. §636(b)(1)(B). Having completed my initial review, I now recommend that Defendant's motion be granted, and that Plaintiff's motion be denied.

## I. Background

The instant case presents few factual disputes.  To the extent that disputes exist, the Court has interpreted the facts in favor of the Plaintiff as the non-moving party.

### A. Relevant Facts

Plaintiff is a commercial truck driver still employed by Defendant.  His complaint alleges that he was subjected to a hostile work environment based upon same-sex harassment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-1 *et seq.*

Plaintiff began his employment as a pick up and delivery driver for Defendant on or about September 25, 2006.   Plaintiff's duties included transporting freight to and from customers at various locations.  Each driver typically would complete 12-16 stops per day, depending on customer needs.  Plaintiff would visit the customers on his assigned route 1-3 times per week, with each stop lasting approximately ten (10) minutes, absent any problems with equipment.  (Doc. 77-4, Higgins Deposition, hereinafter "Higgins," at 57-58, 148-149).[1]

Each employee, including Plaintiff, received a copy of Defendant's employee Handbook and Code of Conduct, which included Defendant's anti-harassment policies. (Doc. 77-10, Winters Affidavit, hereinafter "Winters," at ¶ 3; Higgins at 48-49, 53-54).

On March 6, 2007, Defendant received a complaint about Plaintiff's conduct from one of the customers then assigned to Plaintiff's route, Arvin-Meritor. According to the complaint, Plaintiff called a male Arvin-Meritor employee "gay" and asked a non-receptive,

---

[1]For the convenience of the Court, page references are to the deposition transcript rather than to the electronic record.

2

married, female employee for a dinner date, instructing her not to tell her husband. (Winters at ¶¶4-6; Higgins at 59-60, 71-72).

During Defendant's subsequent investigation of the customer complaint, Plaintiff submitted a written statement in which he admitted calling the customer's employee "gay" and admitted asking the female employee on a dinner date and telling her not to tell her husband.  (Winters at ¶5; Higgins at 59-60).  Plaintiff stated that he asked the female employee out because he wanted to show the male employee that he was not "gay."  *Id.* at ¶5; Higgins at 71-72).  Plaintiff testified that the male Arvin-Meritor employee "looked at me in a feminine manner, his body language was feminine, so, therefore, I knew this man was not a heterosexual because he was exploiting his homosexuality on the job."  (Higgins at 66).  Plaintiff's actions were offensive to the female employee and caused Arvin-Meritor to instruct Defendant not to dispatch Plaintiff to its facility again.  Defendant complied with its customer's request, permanently removing Arvin-Meritor from Plaintiff's route.

Shortly after this incident, on March 19, 2007, Defendant conducted a performance review of Plaintiff.  Defendant discussed Plaintiff's misconduct at Arvin-Meritor and Defendant's Human Resources Director, Terri Winters, explained to Plaintiff how his conduct violated Defendant's anti-harassment policy.  Defendant issued Plaintiff a "Need for Improvement Notice" based upon the incident, and advised him that "[a]ny incident involving a negative customer interaction will be just cause for immediate termination." (Winters at ¶6; Higgins at 80).  Plaintiff was issued a final warning and counseled on Defendant's expectations for employee interactions with Defendant's customers.  (Winters at ¶6; Higgins at 87-88).

Nearly a year after being reprimanded, Plaintiff was involved in two incidents

3

involving a different customer - Parker Hannifin. On March 17, 2008, Plaintiff contends that while he was adjusting freight in his trailer at Parker Hannifin's facility, a male Parker Hannifin employee arrived on a forklift and inquired if Plaintiff needed any help. (Higgins at 98-99). Plaintiff declined the offer by stating, "no, I got it man," and continued to adjust his freight. (*Id*.). Plaintiff testified that in response to Plaintiff's refusal of assistance, the Parker-Hannifin employee "pinched" his tricep. (*Id.*). Plaintiff testified that the Parker Hannifin employee subsequently

> stood there looking at me just like that other guy over there at Arvin Meritor. Them ole googling eyes with that little feminine look on his face and them damn googling eyes. And that's when I told him to get the hell off my trailer, man...[he] had that one hip to the side motion and, like, a little giggle, a little flirtatious giggle and them damn googling eyes at me, man.

(Higgins at 99-100). Plaintiff admits that the employee did not further speak to Plaintiff, and that he complied with Plaintiff's request to leave the trailer. (Higgins at 101).

Plaintiff complained of the encounter to another Parker Hannifin employee and sought out a Parker Hannifin supervisor in order to make a formal report. (Higgins at 102). He also informed a Vitran dispatcher of the incident. (Higgins at 102). The dispatcher advised Plaintiff that the Defendant's Terminal Manager, Chuck Weber, was on vacation, but that he would pass along Plaintiff's complaint to the Acting Terminal Manager. (Higgins at 103). Plaintiff finished loading his freight and left the Parker Hannifin facility without further incident. (*Id.*).

Two days later on March 19, 2008, Plaintiff returned to the same customer facility. On this second occasion, Plaintiff testified:

> [The Parker-Hannifin employee] came and stood next to me while I was signing his bill of lading and I told the man step off. And he would not step off. I said, "step off"... he was standing right there next to me just looking at

4

> me, man with them little – that gay look.  Okay?  He's standing right there on the job with his friends, just stepped away from him, went back to their positions and looking over there at him doing what he was doing to me. Right there on the job at Parker-Hannifin on their premises this man did this to me.  Second time.

(Higgins at 105).  The Parker Hannifin employee eventually moved away; no physical contact occurred during this second incident.

As with the first incident, Plaintiff testified that he complained about the second incident to a Parker Hannifin supervisor on premises, to Defendant's dispatcher, and to Defendant's Acting Terminal Manager. (Higgins at 105-107).  Defendant's Acting Terminal Manager informed Plaintiff in response that he would pass along the complaint to Defendant's Terminal Manager, Mr. Weber, the following Monday when Mr. Weber returned from vacation.  (Higgins at 107-108).

On April 1, 2008, Plaintiff telephoned Ms. Winters to advise her that he had previously emailed a statement to her at Defendant's "HR Mailbox."  However, Ms. Winters had not seen that email because she did not routinely examine the "HR Mailbox" address, which generally was used to elicit responses to employment advertisements.  (Winters at ¶8).  During the same telephone conversation, Plaintiff reported that a Parker Hannifin employee was making eye contact with him and was making "unmanly gestures" by holding his hand upward as if to give a pledge and wiggling his fingers.  Consistent with the "Need for Improvement Notice" issued to Plaintiff a year earlier based on the incident at Arvin-Meritor, Ms. Winters verbally instructed Plaintiff to be professional even if he perceived that the customer's employee was not acting professionally.  (*Id.*).

The parties dispute whether Plaintiff reported that the Parker Hannifin employee pinched his arm.  Winters denies in her affidavit having been so informed in the telephone

5

conversation.  However, in Plaintiff's cross-motion he alleges (Doc. 8 at 3) that Ms. Winters had just inquired "how the guy were [sic] holding his arm while talking to you?" when the call was abruptly disconnected due to problems with Plaintiff's telephone reception. (Winters at ¶¶7, 8; Higgins at 111-112).

In any event, within a few hours of receiving Plaintiff's complaint Ms. Winters directed Mr. Weber to dispatch other drivers to Parker Hannifin whenever possible.  Ms. Winters also instructed Mr. Weber to remind Plaintiff to remain professional in his dealings with customers, and to submit in writing his concerns with the Parker Hannifin employee who had made "unmanly gestures" towards him.  In compliance with Ms. Winters' instructions, Mr. Weber reduced the frequency of Plaintiff's dispatches to the Parker Hannifin facility, selecting other drivers whenever possible.  (Doc. 77-11, Weber Affidavit, hereinafter "Weber," at ¶3).

No other driver reported any harassment or unprofessional problems in their interactions with Parker Hannifin employees.  Likewise, Plaintiff did not again complain about any conduct involving a Parker Hannifin employee.  Plaintiff admits that the Parker Hannifin employee about whom he had complained spoke to Plaintiff only in a professional manner after Plaintiff's March 19, 2008 complaint.  (Higgins at 135).

In response to Ms. Winters' request, Plaintiff submitted a written statement dated April 28, 2008 that referenced the two March dates on which the Parker Hannifin employee made "unmanly gestures."  Plaintiff's April 28 statement did not refer to any other incidents, and did not reference any problems occurring after the March 19, 2008 incident.

Upon receipt of Plaintiff's written statement, Ms. Winters continued to investigate the two reported incidents.  She asked Mr. Weber to contact Parker Hannifin to request

that it also investigate, and to ensure that its employees refrained from any inappropriate behavior toward Defendant's employees.  (Winters at ¶11; Weber at ¶5).  In response, Parker Hannifin sent an email from Mr. Jerry Emrick to Mr. Weber dated May 9, 2009. That email related the results of Parker Hannifin's own investigation:

> We have completed our internal investigation related to your employee's complaint of sexual harassment.  After discussion with the shift supervisor and reviewing prior history, our management feels the accusations of inappropriate verbal innuendo, propositions, and physical contact, was misinterpreted and was not intended to be an intentional act of harassment.
>
> Parker Hannifin has a responsibility to provide a safe work environment to our employees and associated business partners such as Vitran Express. Any type of harassment will not be tolerated and will be immediately addressed.  We appreciate you brining [sic] this situation to our attention and working with us toward a resolution.
>
> Per our discussion on May 7, 2008, the company will reaffirm our position to this type of behavior with our employee.  All employees are expected to conduct business in a professional and respectful manner with consideration of others.

(Winters at ¶12; Weber at ¶5).  Before Parker Hannifin's response was received, Mr. Weber permanently removed Parker Hannifin from Plaintiff's regular customer route.  (*Id.*). Plaintiff's last dispatch to the Parker Hannifin facility was on May 6, 2008.  (Higgins at 123-124).

On or about November 23, 2009, Defendant reassigned Plaintiff at his request to perform linehaul driving duties rather than pick up and delivery service.  As a linehaul driver, Plaintiff no longer makes any stops at customer locations; instead, Plaintiff transports freight to and from Defendant's own Service Centers.  (Higgins at 36-37).

Plaintiff is pleased with the reassignment.[2]  (Higgins at 125).

## II.  Analysis

## A.  Defendant's Motion - Summary Judgment Standard of Review

In a motion for summary judgment, "a court must view the facts and any inferences

that can be drawn from those facts ... in the light most favorable to the nonmoving party."

*Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir.2007) (internal

quotation marks and additional citations omitted).  "Summary judgment is only appropriate

'if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting

Fed.R.Civ.P. 56(c), internal quotation marks omitted). "Weighing of the evidence or making

credibility determinations are prohibited at summary judgment-rather, all facts must be

viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff,

however, does not mean that the court must find a factual dispute where record evidence

contradicts Plaintiff's wholly unsupported allegations.  After a moving party has carried its

initial burden of showing that no genuine issues of material fact remain in dispute, the

burden shifts to the non-moving party to present specific facts demonstrating a genuine

issue for trial. *Matsushita Elec. Indus. Co., Ltd.  v. Zenith Radio Corp.*, 475 U.S. 574, 586-

87 (1986).  "The 'mere possibility' of a factual dispute is not enough."  *Mitchell v. Toledo*

---

[2]Plaintiff states in his cross-motion that he was suspended during the course of this litigation for an apparently unrelated violation, but that he recently prevailed in an administrative proceeding related to that suspension.  (Doc. 80 at 4).

8

*Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50, 106 S.Ct. 2505 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356, inferences are not to be drawn out of thin air. Rather, it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines,* 602 F. Supp. 1224, 1244-45 (E.D.Cal.1985), *aff'd,* 810 F.2d 898, 902 (9th Cir.1987). To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1356 (citation omitted).

### B.  Plaintiff's Claim and Grounds for Defendant's Motion

Plaintiff's complaint alleges same-sex sexual harassment under Title VII based upon the March 17 and March 19, 2008 interactions with Defendant's customer's employee. Plaintiff's complaint refers primarily to the March 17 incident, alleging in its entirety:

> On March 17, 2008 I were [sic] touched inappropriately at Parker-Hannifin Inc.  The material handler that works in the shipping dept., pinched my tricep

[sic] while I were [sic] adjusting freight on the trailer.  He did this while other co-workers looked on, and he had no concern of losing his position, nor his job.  After informing my chain of command, and his supervisor, I were [sic] dispatched to this customer for an additional seven weeks, two weeks of torment, and just uncomfortable situations for the remaining weeks.

Respectfully, I ask that the court hear my case, and determine if there are double standards in what constitutes sexual harassment.

(Doc. 3 at 2-3).

In order to demonstrate a *prima facie* case of hostile work environment sexual harassment by a co-worker,[3] Plaintiff must show that (1) he is a member of a protected class; (2) he was subject to unwelcome sexual harassment; (3) the harassment was based on Plaintiff's sex; (4) the harassment unreasonably interfered with Plaintiff's work performance or created a hostile work environment; and (5) the employer knew or should have known of the charged sexual harassment and failed unreasonably to take prompt and appropriate corrective action.  *See Fenton v. HiSAN, Inc.,* 174 F.3d 827, 829-30 (6th Cir. 1999); *see also Williams v. General Motors Corp.,* 187 F.3d 553, 560-61 (6th Cir. 1999). On the facts presented, Defendant argues that it is entitled to summary judgment because Plaintiff cannot prove the third, fourth, and fifth elements of his *prima facie* case.   Failure to establish a *prima facie* case is grounds to grant the defendant summary judgment. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir. 1989).

### 1.  Failure to Establish Harassment Based on Sex

Beginning with the third element, Defendant argues that the incidents of which

---

[3]Several courts have acknowledged the viability of discrimination claims even where the discrimination occurred at the hands of customer, so long as the plaintiff proves that his employer "condones" the practice. *See, e.g., Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1072-74 (10th Cir. 1998). Although the cases cited by the Defendant concern co-worker harassment, this Court assumes that the same elements would be required for a claim based upon customer harassment.

Plaintiff complains were not based on Plaintiff's sex.  The Supreme Court held in *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75 (1998), that Title VII prohibits discrimination based on sex which alters the terms and conditions of the workplace, notwithstanding whether such discrimination takes the form of opposite-sex sexual harassment or same-sex sexual harassment.  *Id.,* 523 U.S. at 80-82.  The Court explained the type of evidence required to prove such a claim, noting that an inference of discrimination may be more difficult to draw in cases involving same-sex harassment, depending on social context.  For example, "[a] professional football player's working environment is not severely or pervasively abusive...if the coach smacks him on the buttocks as he heads onto the field - even if the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office."  *Id.* at 81.

> The Court explained:
>
> Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex.  The same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual.  But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace. A same-sex harassment plaintiff may also, of course, offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "*discrimina[tion]* ... because of ... sex."

*Id.*, 523 U.S. at 80-81, 118 S.Ct. at 1002.  The Court made clear that in order for the conduct to fall within the purview of Title VII, the harassing conduct must be on the basis of sex, and pervasive or severe enough to alter the conditions of the workplace.  "We have always regarded that requirement as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace -such as male-on-male horseplay-…for discriminatory 'conditions of employment.'" *Id.* at 81 .

Thus, in *Oncale,* the Supreme Court outlined three different evidentiary routes by which a plaintiff can show same-sex sexual harassment.  First, a plaintiff can show that explicit or implicit proposals of sexual activity were made by a harasser motivated by sexual desire.  Second, a plaintiff can show that the harassing conduct stemmed from a general hostility to the presence of men in the workplace.  Third, a plaintiff can offer direct comparative evidence of how the harasser or harassers treated men versus women in a mixed sex workplace.  *Id.* at 80-81.  Whichever evidentiary route pursued, however, "he…must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimina[tion]*…because of sex.'" *Id.* at 81 (emphasis in original).

Although the three evidentiary routes outlined in *Oncale* may not be exhaustive, in this case Plaintiff Higgins has not developed any other theories that support an inference of harassment based on his sex.  Plaintiff alleges that he was harassed because of his sex when a customer's employee operating a forklift asked if he needed assistance in moving twelve skids of material on March 17, 2008.  In a written statement dated April 28, 2008, Plaintiff reported that he responded "no, it's just a couple of skids, I got it." When the

employee did not immediately move out of the way, Plaintiff said "hey, I got it man, you're in the way," at which point the man "pinched [Plaintiff's] bicep" as he left the trailer with "goggling [sic] eyes." (Doc. 77-9, Exhibit 11 to Higgins Deposition). Consistent with his written statement, Plaintiff testified at his deposition that the Parker Hannifin employee pinched his arm and looked at him with "googling eyes with that little feminine look on his face..." (Higgins at 99-100, 134-137). On a subsequent dispatch two days later, the same Parker Hannifin employee "came and stood next to me while [he] was signing my bill of lading...he was standing right there next to me just looking at me, man, with them little – that gay look." (Higgins at 105).

Plaintiff's own descriptions of the incidents leave no doubt that the evidence is insufficient as a matter of law to show that the Parker Hannifin employee's behavior was undertaken because of sexual desire or hostility to men. Rather, the complained of conduct does not appear to be outside the ordinary tribulations of the workplace. In another recent case this Court found that far more vulgar male-to-male interactions was insufficient to move beyond mere "vulgarity" to actionable sex discrimination. *See Ellis v. Smurfit-Stone Container Corp.,* Case No. 1:10-cv-548-SKB*,* Doc. 32 (May 4, 2011 order granting summary judgment on hostile work environment claim where co-worker stated that he was homosexual, had served 18 years for rape, showed the plaintiff a picture of a naked man, told the plaintiff that a certain product reminded him of a penis, and that it had been "too long since he had any," and joked that if the plaintiff did push-ups, he would "picture [the plaintiff] underneath him"). As the Sixth Circuit has noted, "[s]ince the conduct complained of in many of these sexual harassment cases is so offensive, it is easy to understand that a sense of decency initially inclines one to want to grant relief. It is easy

13

to forget, however, that Title VII deals with discrimination in the workplace, not morality or vulgarity." *Equal Employment Opportunity Comm. v. Harbert-Yeargin, Inc.,* 266 F.3d 498, 519 (6th Cir. 2001).

As in *Ellis v. Smurfit-Stone Container Corp.*, in this case the Plaintiff has produced no evidence that the conduct by the Parker Hannifin employee was motivated by any sexual desire.  The male employee made no explicit remarks, never propositioned Plaintiff for sex, and never asked him out.  The lone physical contact was the action of the employee briefly "pinching" Plaintiff's bicep or tricep on one occasion, which appears to have been done in a teasing or joking manner.  When Plaintiff directed the employee to leave, he did so, albeit not as quickly as Plaintiff would have liked.

Plaintiff has not produced evidence of any sex-specific and derogatory terms by the customer's employee or other employees that could demonstrate general hostility toward other men in the workplace.  Finally, he can offer no direct comparative evidence of differential treatment of the sexes in his workplace by either the Parker Hannifin employee or anyone else.  Thus, Plaintiff cannot establish the third prong of his *prima facie* case as a matter of law.  *See Taylor v. H.B. Fuller Co.,* Case No. 1:06-cv-854, 2008 WL 4647690 *6-7 (S.D. Ohio Oct. 20, 2008)(plaintiff was subjected to grouping, humping, and otherwise inappropriate touching by coworkers on at least six different occasions but the same-sex harassment claim was dismissed because plaintiff did not show that the alleged conduct, although deplorable and unacceptable, amounted to discrimination because of sex).

### 2.  Failure to Establish Severe or Pervasive Conduct

With respect to the fourth element, Defendant argues persuasively that the conduct

14

was not sufficiently severe or pervasive to interfere with Plaintiff's work performance, or to create an environment that a reasonable person would find hostile. "[T]he issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether – taken together – the reported incidents make out such a case." *Williams,* 187 F.3d at 562. Unless extremely serious, isolated incidents of harassment will not amount to actionable changes in the terms or conditions of employment. *See Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 790 (6th Cir. 2000). Title VII was never intended as a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)(quoting *Oncale*, 523 U.S. at 80). Thus, "complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing'" are legally insufficient to obtain relief under Title VII. *Faragher*, 524 U.S. at 788 (*quoting* B. Lindemann & D. Kadue, *Sexual Harassment in Employment Law* 175 (1992)). To prove discrimination in the form of a hostile work environment, a plaintiff must show that:

> the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment …
>
> * * * * * *
>
> Conduct that is not severe or persuasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Virgilio v. Potter,* 59 Fed. App'x 678, 681 (6th Cir. 2003) (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-23 (1993)).

Given this standard, it is clear that the two specific incidents upon which Plaintiff

bases his claim simply do not rise to the level of objectively severe or pervasive harassment that affected the terms, conditions, or privileges of Plaintiff's employment. Plaintiff's allegations that he was subjected to "two weeks of torment," and approximately five additional weeks of "just uncomfortable situations" before Parker Hannifin was permanently removed from his route, provide no additional support for his claim.  Although Plaintiff testified that subsequent to the March 17 and 19th incidents the Parker Hannifin employee continued to make "unmanly gestures" while driving his forklift in Plaintiff's line of sight, Plaintiff admitted that the employee never spoke to him unprofessionally or even interacted with him directly ever again.  (Higgins at 135).  Plaintiff's visits to the Parker Hannifin facility were not a daily occurrence, and on the 1-3 times per week that he was dispatched to that facility, Plaintiff would generally complete his work within ten minutes. During none of the encounters did the employee ask Plaintiff on a date, proposition him, or make any direct sexual comments.  Although the employee teasingly pinched Plaintiff's arm during the first incident, he left the area and responded "yes" when Plaintiff subsequently confronted him and said "I shake hands... do you understand?" (Doc. 77-9).

The type of isolated, sporadic, and relatively benign encounters of which Plaintiff complains are not sufficiently pervasive or severe so as to support a hostile work environment claim.  The Sixth Circuit has held in other cases that far more egregious conduct does not create a hostile work environment, even when there is evidence (unlike here) that the conduct was motivated by some discriminatory animus.  *Accord, Bowman v. Shawnee State University*, 220 F.3d 456, 459 (6th Cir. 2000)(female university dean rubbed shoulder of male instructor on one occasion, and on another occasion grabbed his buttocks and said "I control [your] ass."); *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 823-

16

24 (6th Cir. 1997)(conduct over four month period involving repeated sexual jokes, one occasion of looking plaintiff up and down and stating "there's nothing I like more in the morning than sticky buns," insufficiently severe or pervasive); *see also Stacy v. Shoney's Inc.*, 142 F.3d 436 (Table, text available at 1998 WL 165139)(6th Cir. 1998)(summary judgment affirmed even though male supervisor continuously made sexually suggestive comments over two month period and touched female employee's breast on one occasion); *Bishop v Ohio Dept. of Rehabilitation and Corrections*, 695 F. Supp.2d 707 (S.D. Ohio 2010)(sporadic or irregular acts less likely to constitute hostile work environment).

### 3. Failure to Establish Inadequate Employer Response

Last, the Defendant is entitled to summary judgment because Plaintiff has failed to prove the fifth prong of his *prima facie* case. With respect to that prong, the Sixth Circuit has explained that "[t]he act of discrimination by the employer in [a hostile work environment case] is not the harassment, but rather the inappropriate response to the charges of harassment." *McCombs v. Meijer, Inc.,* 395 F.3d 346, 353 (6th Cir. 2005)(internal quotation marks and citation omitted). Accordingly, the relevant inquiry here is whether Defendant's conduct constituted appropriate remedial action after Defendant was put on notice of the Parker Hannifin employee's behavior towards Plaintiff. This is because, as the Sixth Circuit has stated in discussing hostile work environment claims, "when the allegations of sexual harassment involve a coworker, and the employer has fashioned a response, the employer will only be liable 'if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known.'" *Id.; see also Kasprzak v. DaimlerChrysler Corp.,* 431 F. Supp.2d 771, 776 (N.D.

17

Ohio 2005)(recognizing that an employer may be held liable for a negligent remedial response); *Courtney v. Landair Transport, Inc.,* 227 F.3d 559, 564-65 (6th Cir. 2000); *Harbert-Yeargin, Inc., 2*66 F.3d at 518.

An employer's response will be deemed to be adequate if it is "reasonably calculated to end the harassment." *Hawkins v. Anheuser-Busch, Inc.,* 517 F.3d 321, 340 (6th Cir. 2008)(quoting *Jackson v. Quanex Corp.*, 181 F.3d 647, 663-64 (6th Cir. 1999)). On the facts presented, the Defendant's response was neither indifferent nor unreasonable. The alleged harasser was not one of Defendant's employees, and the harassment did not occur on Defendant's property. Nonetheless, in addition to immediately launching an investigation into Plaintiff's complaint, the Defendant altered Plaintiff's usual route to minimize future contact, and within a few weeks permanently reassigned the Hannifin Parker facility to another driver. The Defendant also informed Parker Hannifin of Plaintiff's concerns and requested that Parker Hannifin initiate its own investigation and ensure that its employees cease any offensive conduct toward Defendant's drivers.

Plaintiff admits that he did not experience any overt harassment following March 19, notwithstanding his complaints that he continued to feel "uncomfortable" until several weeks later when Parker Hannifin was permanently removed from his route. However, Plaintiff complains that Defendant's response was inadequate because the Defendant did not *immediately* remove Parker Hannifin from his route when Plaintiff made his first verbal complaint on March 17, rather than some weeks later after it had completed its investigation. In Plaintiff's cross-motion, he alleges (without citation to the record) that when he complained initially about Defendant continuing to dispatch him to Parker

18

Hannifin, Mr. Weber told Plaintiff to "ignore him [the Parker Hannifin employee], he knows your feelings about this, so now he's going to play on them."  (Doc. 80 at 2).

Even if some fault could be found, however, "[t]he law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with."  *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996).  The court's role "is to prevent unlawful ... practices, not to act as a 'super personnel department' that second guesses employers' business judgments."  "  *See Hedrick v. Western Reserve Care System*, 355 F.3d 444, 462 (6th Cir. 2004), *quoting Simms v. Okla. ex rel. Dept. of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999)(additional citation omitted).

Here, the Defendant's prompt, appropriate, and ultimately successful remedial steps are sufficient to preclude Defendant's liability on Plaintiff's hostile work environment claim.  *See Hawkins v. Anheuser-Busch, Inc.,* 517 F.3d at 344 (upholding summary judgment where after learning of the alleged harassment, the plaintiff's employer "promptly launched an investigation, suspended [the harasser], and then fired him"); *Mullins v. Goodyear Tire & Rubber Co.*, 291 Fed. Appx. 744, 749-750, 2008 WL 4093496 at *5 (6th Cir. 2008)("absent evidence of continued sexual harassment, we are unwilling to impose liability on [Defendant] for failing to keep [the alleged harasser and plaintiff] separated.").

### C.  Plaintiff's Cross-motion for Summary Judgment

In lieu of a response in opposition to Defendant's motion, Plaintiff filed a cross-motion for summary judgment.  Plaintiff first seeks an order overturning the Court's prior dismissal of Parker Hannifin, "and to strike down the decision not allowing the Plaintiff to add hard evidence." (Doc. 80 at 1).  No grounds are suggested for overturning the Court's prior decisions, and this Court can conceive of none.

19

Plaintiff next complains that he was unfairly reprimanded for the 2007 incident at Arvin-Meritor. While that incident may provide historical context, it is not the basis of Plaintiff's hostile work environment claim and provides no grounds on which Plaintiff can be awarded summary judgment.

Plaintiff alleges that with respect to his claim of harassment at Parker Hannifin, the Defendant should be held liable because it dispatched Plaintiff to the same facility a total of seventeen times after he complained on March 17, 2008. Plaintiff argues that Defendant's conduct shows "the negligent abuse of power for allowing the Plaintiff to return to a customer" who had harassed him. (Doc. 80 at 3). Plaintiff additionally complains that Defendant did not ask Parker Hannifin to launch an investigation until some weeks after the March incidents, when Plaintiff informed his supervisors of his intent to file a police report. (*Id*.). However, as previously stated, Plaintiff is not entitled to summary judgment based on any perceived delay in Defendant's actions, because it is undisputed that Plaintiff did not experience any direct, overt harassment after March 19, 2008, and none of the conduct of which Plaintiff complains (including the two March incidents) created a hostile work environment.

In his cross-motion, Plaintiff also alleges - apparently for the first time - that he was subjected to additional "harassment" in terms of reduced overtime assignments, and having to undergo a more rigorous DOT physical examination with the doctor "basically badgering the Plaintiff on the questions," and only certifying him for three months. (*Id*.). Even assuming that Plaintiff had any proof to support these new allegations, he would not be entitled to summary judgment because they do not demonstrate harassment based on Plaintiff's sex. In addition, Plaintiff's complaint includes only a hostile work environment

20

claim, not a retaliation claim.

Last, Plaintiff alleges that he was laid off from work on December 15, 2010 for consuming prescribed Tylenol with codeine, but that he recently received a favorable ruling from the "FMCSA" that Defendant must return him to duty, even though "Mr. D. Kuska will not do so." (*Id.* at 4).   Regardless of whether Plaintiff has evidence to support this allegation, it has nothing to do with his same-sex harassment hostile work environment claim, and does not entitle him to summary judgment.

### III. Conclusion and Recommendation

In sum, Plaintiff has failed to establish the third, fourth, and fifth prongs of his *prima facie* case.  As a result, Defendant's motion for summary judgment on Plaintiff's hostile work environment claim must be granted.

For the reasons stated herein, **IT IS RECOMMENDED:**

1.   That Defendant's motion for summary judgment (Doc. 77) be **GRANTED**;

2.   That Plaintiff's motion for summary judgment (Doc. 80) be **DENIED**; and that

3.   This case be closed and stricken from the active docket.

  *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

REGINALD D. HIGGINS, SR.,                         Case No. 1:09-cv-228

        Plaintiff,                                   Dlott, J.
                                                  Bowman, M.J.

 v.

VITRAN EXPRESS, INC., et al.,

       Defendants.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

22